Douglas F. Martin Clay County Attorney P.O. Box 134 Clay Center, Kansas 67432
Dear Mr. Martin:
You request our opinion on several questions concerning 1998 House Bill No. 2902,[1] which provides for the transfer of powers, duties and functions of a township board to a board of county commissioners.
First, you ask whether the bill allows for a special election, or whether the required election must take place at the same time as a general or primary election. The bill refers to an election twice. The first reference requires a vote of the electors of a township to determine whether the powers, duties and functions of the township board should be transferred to the board of county commissioners of the county in which the township is located. The second reference to an election contains the same requirement when the electors of the township present a petition to have the powers, duties and functions previously transferred to the county commissioners returned to the township board. In both instances "[s]uch election shall be called and held in the manner provided by the general bond law."[2] The general bond law sets forth the requirements for publication of the notice of election and requires that the election "be held within 45 days after compliance with the necessary requirements, or within 90 days, should the longer period include the date of a general election."[3] The bond statute contemplates a special election unless there is a general election within 90 days.
Your next question is whether there is a certain time after the election that the transfer of township assets and property must take place, or whether the time of transfer is discretionary. The statute does not prescribe a certain time other than "upon approval of the resolution by the voters." Therefore, the transfer may be made at the discretion and agreement of the township and county officials, but should be accomplished within a reasonable time after voter approval. To unduly delay the process would thwart the intent of the law.
You explain that Clay County's road and bridge fund is exempt from the statutory tax levy limitations,[4] however the township levies within Clay County are not exempt from those limitations. You ask whether under House Bill No. 2902 a county or township may take steps to exempt its levies from the statutory limitations. The bill states that a county is "subject to the same limitations imposed by law on township boards" when the county levies a tax upon the property of the township after a transfer of township duties to the county. K.S.A. 79-5036 authorizes a county or township to exempt its levies from the statutory limitations. House Bill No. 2902 does not prohibit a county or township from exercising its rights under K.S.A. 79-5036; therefore, a county that has received the powers of a township under House Bill No. 2902 may elect to exempt its levy of the township's property using the procedure set out in K.S.A. 79-5036. In other words, a board of county commissioners steps into the shoes of the township board whose powers have been transferred to the county and is subject to the same limitations as the township board was. If a board of county commissioners wants to create an exemption from the levy limitations for the township when the levy was not previously exempted by the township board, the board of county commissioners must follow the procedures set forth in K.S.A. 79-5036 to exempt the levy limits on the taxable property of the township.
Your next question is whether Clay County may expend funds from the county road and bridge fund to repair and improve township roads and bridges. Attorney General Opinion No. 87-22 addressed the question of whether a county may undertake the repair of a township road. That opinion concluded that if no agreement between the township and county can be reached concerning maintenance, according to K.S.A. 68-124 if the township neglects proper care, the county may take over maintenance of a township road and charge the expenses to the township. The statute clearly contemplates reimbursement by the township to the county for funds expended by the county to repair a township road. Although the township board has the general charge and supervision of all township roads and culverts,[5] all county bridges, including those over township roads, shall be constructed, repaired and maintained by the board of county commissioners and the cost of such work shall be paid from the bridge fund of the county.[6] Under House Bill No. 2902, when a county takes over the duties of a township, the county would pay for township road work from the special fund created by the county at the time the transfer is made. "The board of county commissioners shall expend the moneys in such special fund for the exercise of the powers, duties and functions imposed by law upon township boards in the township from which it was received."[7] The bill further requires the board of county commissioners to budget for the exercise of the powers and duties transferred to the county and "to levy a tax upon all assessed taxable tangible property of the township sufficient to raise the amount for such expenditures."
Your fifth question is whether a county may transfer money from a special fund for a township to the county general fund or to the county road and bridge fund after a township board has transferred its powers to the county. House Bill No. 2902 states that a township shall pay all of its funds to the county treasurer upon the transfer of township duties to the county, and that the county treasurer shall credit the township funds to a special fund for each township. Further, the board of county commissioners is required to expend the money in the special fund "for the exercise of the powers, duties and functions imposed by law upon township boards in the township from which it was received."[8]
Therefore, a board of county commissioners may not transfer township funds into the county's general fund or into any other county fund. Rather, the township funds must be deposited into a special fund and remain separate from other county funds.
You also ask whether a board of county commissioners becomes responsible for any pre-existing and future liabilities of the township whose powers have been transferred to the county. The bill does not address liability, and it is impossible to predict liability issues in the abstract. Liability is ultimately a question of fact to be determined based on the specific facts of a situation. The township may have insurance or bonds that might cover prior acts. The answer to your question may also depend on the county's insurance coverage. Absent a specific factual situation, we cannot provide a definitive answer to this question.
Your question regarding whether a county is required to keep a separate set of books and accounts for each township that transfers its powers to the county is answered by our response to your fifth question above. You also ask how a county should apportion costs for township matters including employee expenses, equipment expenses, insurance for township roads and road material expenses. House Bill No. 2902 does not address apportionment of costs between a county and any townships the board of county commissioners manages. Therefore, it is within the discretion of the board of county commissioners to determine how best to apportion costs.
Your last question is whether the transfer of powers from a township to a county under House Bill No. 2902 precludes the county from adopting a county road unit system with respect to those townships that have transferred their powers to the county. A careful reading of House Bill No. 2902 reveals that it does not provide for the abolishment of a township. Only the board of the township is abolished upon transfer of its powers and duties to the board of county commissioners. Therefore, a transfer of powers under the bill does not automatically transform township roads into county roads, even though both township and county roads would be maintained by the board of county commissioners. Under the county road unit system, townships must relinquish to the county all money and equipment accumulated by the townships for road construction and maintenance purposes, and all roads within the county are reclassified so that township roads no longer exist.[9] In our opinion, the county road unit system statutes do not conflict with the provisions of House Bill No. 2902, and a county would not be precluded from adopting a county road unit system with respect to those townships that have transferred powers to the county as long as the county follows all statutory requirements for adopting a county road unit system.
In conclusion, the elections required by 1998 House Bill No. 2902 may be conducted as special elections or in conjunction with a general election depending on the timing of the notice of election. The transfer of township assets and property to a board of county commissioners under 1998 House Bill No. 2902 should be accomplished within a reasonable time after approval by the voters. A board of county commissioners that exercises the powers and duties of a township board is subject to the same levy limitations as the township board, and must follow the procedures set forth in K.S.A. 79-5036 to exempt the taxable property of the township from the levy limits. Bridges on township roads should be constructed and maintained by the county, and the costs of such work should be paid from the bridge fund of the county. When a county takes over the duties of a township under 1998 House Bill No. 2902, the county should pay for road work on township roads from the special fund for the township. Township funds may not be transferred into a county's general fund but must be kept in a special fund that is separate from county funds. Because 1998 House Bill No. 2902 does not address apportionment of costs between a county and any townships a board of county commissioners manages, it is within the board's discretion to determine how to apportion costs. A county that has assumed management of a township is not precluded from adopting a county road unit system if the county follows all statutory requirements for adopting a county road unit system.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Donna M. Voth Assistant Attorney General
CJS:JLM:DMV:jm
[1] L. 1998, Ch. 105.
[2] L. 1998, Ch. 105, § 1(a).
[3] K.S.A. 10-120.
[4] K.S.A. 79-5021 et seq.
[5] K.S.A. 68-526.
[6] K.S.A. 68-1104.
[7] L. 1998, Ch. 105, § 1(b).
[8] Id.
[9] K.S.A. 68-515b et seq.